IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS of EASTERN PENNSYLVANIA and DELAWARE BENEFIT PENSION FUND, et al., Plaintiffs, v. N. ABBONIZIO CONTRACTORS, INC., Defendant. | CIVIL ACTION No. 15-599 |

**MCHUGH, J.**                                                                                  **NOVEMBER 18, 2015**

## MEMORANDUM

### I. Factual and Procedural History

Plaintiffs brought this action on February 9, 2015 to recover damages pursuant to the Employee Retirement income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"). Compl. at 1. The Complaint alleges that at all times relevant to this matter, Plaintiffs and Defendant have been parties to a series of Collective Bargaining Agreements ("CBA"). Compl. at ¶ 7. Through these agreements, Defendant agreed to pay contributions to the Funds based upon the number of hours worked by and wages paid to each of its employees covered by the CBA. Compl. at ¶ 7. The Complaint alleges that a payroll audit revealed Defendant has failed to pay $4,735.28 in required contributions between January 1, 2009 and December 31, 2011. Compl. at ¶ 13. In addition, the CBA stipulates a monthly deadline for payments and authorizes the Funds to charge interest on delinquent contributions until paid. CBA Sec. 7(2). The Complaint alleges that between the period of January 2010 and August 2014, the Defendant submitted some contributions but did so after the monthly deadline, and as a

1

result Defendant has been assessed $10,078.09 in interest charges.  Compl. at ¶¶ 23, 28.  Finally, the Trust Agreements governing the Funds allow the Plaintiffs to conduct an audit of an employer's payroll and employment records to ensure the correct contributions were made.  Compl. at ¶ 12.  The Complaint alleges that Defendant denied multiple requests to access the books and records necessary for another payroll audit.  Compl. at ¶¶ 30–38.

Defendant was served with the Complaint and Summons on February 18, 2015 but did not respond.  (Doc.  2).   Plaintiffs filed a Request for Default on April 6, 2015, and the Clerk entered default on the same day.  (Doc. 3).  Plaintiffs also filed a Motion for Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure and served Defendant with that Motion on April 6, 2015.  (Doc. 4).  Plaintiffs now seek judgment on the following: all unpaid contributions revealed by the payroll audit; interest on contributions not paid and/or paid late; liquidated damages; and attorneys' fees and costs.  Mot. Default J. at ¶ 16(b)(i–iii).  Plaintiffs also request that this Court compel Defendant to cooperate with a payroll audit and retain jurisdiction to enter judgment on any additional contributions found to be owing.  Motion Default J. at ¶ 16(a), (d).

To date, Defendant has not appeared in this action or otherwise responded to Plaintiffs' Complaint or Motion for Default Judgment.

**II. Default Judgment Standard**

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  Following the entry of default, the clerk may enter a default judgment if the plaintiff's

2

claim is for a sum certain, but otherwise the plaintiff must apply to the court for judgment.  Fed. R. Civ. P. 55(b).

Following the prerequisite entry of default, the decision to enter a default judgment is left to the court's discretion.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir.1984).  This discretion is not unlimited, however.  "[I]n exercising its discretion, the trial court must consider three factors: 1) whether the plaintiff will be prejudiced if the default is lifted; 2) whether the defendant has a meritorious defense; and 3) whether the default was the result of the defendant's culpable misconduct." *Id.* at 1181.  Under ERISA, a plan is still required to pay benefits to participants regardless of whether an employer makes its contributions to the plan. *See* 29 C.F.R. § 2530.200b-2.  Thus, "[i]f the plan at issue is part of a multi-employer contribution system, as here, any delinquent contributions owed by a covered employer impairs the plan's ability to pay both the beneficiaries of the delinquent employer as well as employees of companies who have made their contributions." *Carpenters Health & Welfare Fund v. Bold & Clauss Constr.*, Inc., No. 05-04858, 2006 WL 782051, at *2 (E.D. Pa. Mar. 23, 2006).  Therefore, I find that Plaintiffs will be prejudiced if default judgment is not entered.  Since the Defendant has filed no responsive pleadings, the court is not in a position to determine whether the Defendant has a "meritorious defense" or whether the default was the result of misconduct.  As the docket indicates that Defendant was properly served, I am confident that I may enter a default judgment.

### III. Assessing Liability and Damages

The court should accept as true any factual allegations of the Complaint, except those related to the amount of damages.  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at

3

444 (2d ed. 1983). In addition, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10 C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure*, § 2688 at 444 (2d ed. 1983). I will consider each count of the Complaint in turn to determine whether the Plaintiffs have stated a legitimate cause of action, and if so, what is the appropriate amount of damages.

### A. Unpaid Contributions Revealed by Payroll Audit

Count I of Plaintiffs' Complaint seeks statutory damages related to unpaid contributions revealed by the payroll audit. ERISA provides that an employer obligated to make contributions to a multiemployer plan under the terms of a CBA must make those contributions in accordance with the terms and conditions of the agreement. 29 U.S.C. § 1145. A plan fiduciary is permitted to sue an employer who fails to make such required contributions. 29 U.S.C. § 1132(a). If judgment in favor of the plan is awarded, the court must award the plan:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest is determined using the rate provided for by the plan, or if none, a statutory rate. *Id.*

Plaintiffs have provided sufficient evidence that Defendant owes $4,735.28 in unpaid contributions as revealed by the payroll audit. In addition, Plaintiffs are entitled to interest on

that sum at the rate provided in the CBA, which is ten percent per annum.  CBA Art. V, Section 7(5).  Plaintiffs have also requested $2,922.50 in attorneys' fees and costs.  Mot. Default Judgment ¶ 16(c).  The Plaintiffs have provided an accounting of the incurred fees and costs that I find demonstrate the requested amounts are reasonable.  I therefore find that Plaintiffs are entitled to all of these amounts as requested.

However, in their Motion for Default Judgment, Plaintiffs claim that they are also entitled to liquidated damages in the amount of twenty percent of the principal amount, arguing that this is appropriate because it is the greater amount allowable under 29 U.S.C. § 1132(g)(C).  This argument fails for two reasons.  First, while twenty percent of unpaid contributions is allowed by ERISA as a measure of liquidated damages in some circumstances, 29 U.S.C. § 1132(g)(C)(ii) specifies that this limit is only to be reached if "provided for under the plan."  The CBA in this case only provides a liquidated damages penalty of ten percent.  CBA Art. V, Section 7(5).  Second, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Plaintiffs initially requested liquidated damages in the amount of ten percent of the unpaid contributions in their Complaint.  Compl. at ¶ 21(4); Mot. Default J. at ¶ 16(b)(iii).  Since the Complaint only requested liquidated damages in the lesser amount, Plaintiffs are now limited to recovering ten percent.

*B. Delinquent Contributions*

Plaintiffs also request judgment for interest charged on late contributions made between January 2010 and August 2014.  Mot. Default J. at ¶ 16(b)(iv).  Plaintiffs clarified in their Complaint that this demand for damages is not duplicative of Count I because "[t]hese interest charges are for interest on payments that *were made* but were submitted late whereas the interest charges noted in the payroll audit are interest charges on contributions that *were not made* during

5

the audit period." Compl. at ¶ 28 (emphasis added). Plaintiffs assert that they sent Defendant 130 letters demanding a total of $14,286.84 in interest on late payments, and Defendant paid $4,953.23 of this amount. Compl. at ¶¶ 25, 27. Plaintiffs assert that Defendant then made another late payment, adding $744.48 in interest charges, resulting in a total of $10,078.09 in interest charges still owing. Compl. at ¶ 26. Plaintiffs claim they are entitled to the remaining outstanding interest charges. Mot. Default J. at ¶ 16(b)(iv).

Plaintiffs assert that they are entitled to these interest damages pursuant to ERISA. Mot. Default Judgment at ¶ 16(b)(iv). There is, however, a distinction between contributions that are unpaid as compared to those that are late. The Third Circuit has stated that the interest remedy provided by ERISA in 29 U.S.C. §1132(g)(2) applies to contributions *unpaid* at the time a plan *files suit. UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.,* 501 F.3d 283, 289 (3d Cir.2007). Where contributions to a plan were delinquent but have been paid in full prior to the commencement of litigation, the statutory damages under § 1132(g)(2) do not apply. *See Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 654-55 (7th Cir. 2001); *Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988); *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). Any right to relief therefore depends on the terms of the CBA imposing interest on delinquent contributions, rather than on 29 U.S.C. §1132(g)(2)(B) as Plaintiffs claim.

The filings before this Court support a finding that the Defendant and Plaintiffs were parties to a valid CBA. The terms of that agreement explicitly provide that "[i]f a delinquent contribution is not paid by the last day of the month in which it is due, interest shall start to

accrue on the delinquent amounts at the rate of ten percent (10%) per annum from the 1st day of the next month." CBA Art. V, Sec. 7(2).

Plaintiff provided a supplemental affidavit from a collection agent/auditor employed by Plaintiffs since 2004 that outlines Plaintiffs' accounting practices for delinquent payments. Danese Aff. The affidavit asserts that it is Plaintiffs' practice to send a letter in the month following the month that the late payment is received to give the employer notice of the interest due as a result of that late payment. Danese Aff. at 1–2. I am satisfied based on this evidence that Defendant was promptly notified after each late payment, and the interest was properly assessed according to the terms of the CBA. I therefore find that Plaintiffs are entitled to judgment on the $10,078.09 in interest on delinquent payments that Defendant still owes.

*C. Payroll Audit*

Plaintiffs also request that the Court compel Defendant to submit to another payroll audit by providing Plaintiffs access to its offices and business records. Mot. Default Judgment at ¶16(a). ERISA instructs that a court may grant a plan fiduciary "other legal or equitable relief as [it] deems appropriate." 29 U.S.C. § 1132(g)(2)(E). The Supreme Court held in *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.* that such a court-ordered audit was a permissible form of equitable relief when the trust agreements assigned the trustees the power to demand and examine employer records, and the corresponding responsibility to preserve and maintain trust assets. 472 U.S. 559 (1985). Under the terms of the Trust Agreements that govern the present Funds, the Trustees are given the right to examine the payroll and employment records of an employer whenever the Trustees deem it necessary to fulfill their fiduciary duties to properly administer the funds. Annuity Fund Agreement at 5–6; Training and Safety Fund Agreement at 5; Welfare Fund Agreement at 6–7; Pension Fund

7

Agreement at 5–6; Supplemental Unemployment Benefit Fund Agreement at 5.  I am satisfied that Plaintiffs have presented sufficient evidence demonstrating that access to Defendant's financial records is necessary to determine whether any contributions remain unpaid, and that their attempts to contact Defendant and arrange an audit have been ignored.  I therefore grant Plaintiffs their requested relief and order Defendant to submit to an audit.

There appears to be some confusion, however, about the requested period of time that Plaintiffs wish to audit.  Plaintiffs have requested in various filings an audit covering the period of January 1, 2012 through the present, Compl. at ¶ 42(1);  January 1, 2012 through December 31, 2013, Mot. Default J. at ¶ 16(a); January 1, 2010 through the present, Mot. Default J. at ¶ 16(a); and January 1, 2013 through December 31, 2013, Meyer Aff. at ¶ 10.  I find the relevant time period to be the time since the last payroll audit, so I authorize the audit to cover the period of January 1, 2012 through the present.

**IV. Conclusion**

Judgment will be entered in favor of Plaintiffs in the following amounts:

$4,735.28 in unpaid contributions;

$1,310.31 in pre-judgment interest;[1]

$473.53 in liquidated damages;

$2,922.50 in attorneys' fees and costs; and

$10,078.09 in interest penalties for late payments.

Defendant will further be ordered to comply with its obligations according to the Collective Bargaining Agreement and Trust Agreements, by providing Plaintiffs access to its

---

[1] This amount is calculated at a rate of ten percent per annum since Defendant received notice of the amount revealed by the payroll audit until the date of this Order.  Post-judgment interest will continue to run at a rate of ten percent from the date of the judgment until paid, together with any additional reasonable attorneys' fees and costs necessarily incurred to achieve satisfaction of the judgment.

office and business records since January 1, 2012 in order to conduct an audit, and Defendant shall promptly remit any additional amounts found to be owing.

An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Court Judge
